**MONON CORPORATION, Plaintiff,**

v.

**STOUGHTON TRAILERS, INC., Defendant.**

No. 95 C 0511.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 7, 1996.

Mark M. Grossman, Chicago, Illinois and Lee F. Grossman, Lee F. Grossman & Associates, Ltd., Chicago, Illinois, for plaintiff.

John J. Held, Jr. and Thomas J. Wimbiscus, McAndrews, Held & Malloy, P.C., Chicago, Illinois, for Stoughton Trailers, Inc.

Richard Bushnell, Trexler, Bushnell, Giangiori & Blackstone, Ltd., Chicago, Illinois, for Deponent Wabash National Corporation.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Plaintiff, Monon Corporation ("Monon"), has filed a complaint for patent infringement against defendant, Stoughton Trailers, Inc. ("Stoughton"), wherein plaintiff alleges that, since at least February, 1990, the defendant has been infringing plaintiff's "plate trailer" patent (United States Letters Patent No. 4,904,017 ("the Monon patent")) by making, selling, and using trailers embodying the patented invention. Defendant Stoughton has filed its Motion for Summary Judgment of Invalidity of Monon Patent Claims 1 through 4 Based Upon the Commercial Exploitation of the Claimed Invention Prior to the Patent's Critical Date. For the reasons set forth below, defendant's motion is granted.

### I. *FACTUAL BACKGROUND*

Based upon the parties' filings pursuant to Local Rules 12(M) and (N), many of the facts with respect to this motion are not in dispute. The court sets them out as follows.

For the past number of years, defendant Stoughton has manufactured certain van trailers referred to in the trailer industry as "plate trailers", which trailers are designated Stoughton Aluminum Plate Van, Model PVW Hi–Cube. Plaintiff Monon, meanwhile, alleges that it is the owner of U.S. Patent No. 4,904,017, entitled "Trailer Construction" which was issued February 27, 1990. Monon further alleges that Stoughton's plate trailers infringe the Monon Patent and has filed a complaint for patent infringement. Stoughton has made a counterclaim for a declaratory judgment of invalidity, noninfringement, and nonenforceability, and a second counterclaim for false marking.

Monon filed its patent on February 26, 1985, with the United States Patent and Trademark Office. Under 35 U.S.C.

§ 102(b),[1] a patent is barred if the invention was commercially exploited more than one year before the filing of the patent application. The purpose of this statutory bar is to encourage disclosure through the filing and prosecution of a patent application and to prevent extension of the statutory patent term. *Intel Corp. v. United States Int'l Trade Comm'n,* 946 F.2d 821, 830 (Fed.Cir. 1991). The critical date here for "on sale" activity relating to the Monon patent is one year before the filing of the application—thus February 26, 1984.

In the summer of 1983, Monon entered into negotiations with Continental Can Company of Chicago ("Continental") regarding the possible purchase by one of Continental's subsidiaries, Allpoints Trucking Company, of approximately three hundred van trailers. Continental was interested in having a new trailer produced that would increase loading capacity and concluded that Monon's then available trailers (having sidewalls made of a fiberglass reinforced plywood construction) might not be suitable. Over the latter half of 1983, Monon and Continental then began to discuss whether a trailer made from aluminum side panels would be suitable for its fleet. Continental, however, was not willing by the end of 1983 to purchase three hundred of these such trailers. It was willing to order one trailer from Monon with the intention that if it was successful, Continental's subsidiary would purchase three hundred more.

Once Continental decided to go ahead with the order for one trailer, there began the exchange of documents between the parties. On December 19, 1983, Monon sent the following documents to Continental:

1. A first Monon "order confirmation" form addressed to Pete Dunn of Continental stating:

   "We have entered your order for one trailer(s) and have assigned our Production Control Number PC # 3908–C to this group of trailers"

---

1. 35 U.S.C. § 102 provides, in pertinent part:
   A person shall be entitled to a patent unless . . .
      (b) the invention was . . . in public use or on sale in the country, more than one year prior

to the date of the application for patent in the United States . . .

2. A second Monon "order confirmation" form addressed to Pete Dunn of Continental which begins "THANK YOU FOR YOUR VALUED ORDER!" This form goes on to fully describe the ordered trailer, including the following terms: unit type XP–65 E Plate, price $18,490, terms net ten days, F.O.B. customer pickup at Monon. In addition, at the bottom of this form, it is noted that a "SIGNATURE IS REQUIRED ON SALES AND SPECIFICATION CONFIRMATION SHEET FOR FURTHER PROCESSING OF ORDER."

3. A two-sided "Sales & Specification Confirmation Sheet." The front page of this sheet contains the same description and price as the second order confirmation form. The reverse side of this sheet includes a formal recitation of the "terms and conditions" of the sale as well as a description of the warranty to the customer.

These documents were received by Peter Dunn of Continental on December 27, 1983. Continental thereafter completed and executed the "Sales & Specification Confirmation Sheet" by January 3, 1984. On January 17, 1984, Continental returned it to Monon.

Soon thereafter, Monon scheduled the Continental trailer to be built on February 6, 1984. Continental took actual delivery of the trailer on or about April 1984. Later, on August 23, 1984, Continental paid Monon by check $18,640.

Late in 1984, and apparently satisfied with the Monon plate trailer, Continental went ahead and purchased three hundred more of the trailers. On December 3, 1984, Monon sent Continental an "order confirmation" form, similar to the one sent for the previous order. This time, Continental ordered 300 units at $20,200 apiece.

The parties also agree that claims 1 through 4 of the Monon patent read on the trailer allegedly sold to Continental in December 1984.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). When reviewing the record on summary judgment, the court must draw all reasonable inferences in the light most favorable to the non-movant. *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 400 (7th Cir.1992). However, to avert summary judgment, the nonmovant "may not rest upon the mere allegations or denials of the adverse party's pleading" but must set forth specific facts showing that there is a genuine issue for trial. FED. R.CIV.P. 56(e). A dispute about a material fact is genuine only if the evidence presented is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

As the court stated above, an inventor loses the right to a patent if she placed the claimed invention "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States". 35 U.S.C. § 102(b). The determination whether an invention is "on sale" for purposes of the statute is a question of law, based on underlying facts. *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.,* 71 F.3d 1573, 1576 (Fed.Cir.1995); *Ferag AG v. Quipp Inc.,* 45 F.3d 1562, 1566 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 71, 133 L.Ed.2d 31 (1995). Defendant Stoughton, who challenges the validity of Monon patent claims 1 through 4, bears the burden of proving an instance of use or sale of the patented invention prior to the critical date. *Mahurkar,* 71 F.3d at 1576. Proof of such use or sale must be by "clear and convincing evidence." *Id.*

Whether an invention has been placed on sale is not subject to a mechanical rule. *Id.* Rather, the court's ultimate conclusion depends on the totality of the circumstances, considered in view of the policies underlying § 102(b). *Id.* These policies include: "(1) discouraging removal of inventions from the public domain that the public

reasonably has come to believe are freely available; (2) encouraging the prompt and widespread disclosure of inventions; (3) allowing an inventor a reasonable amount of time following sales activity to determine the potential economic value of a patent; and (4) prohibiting an inventor from commercially exploiting his invention beyond the statutorily prescribed time." *Id.* While a wide variety of factors may influence the sale determination, the Federal Circuit has stressed that commercialization is the central focus. *Id.* (citing *Ferag AG*, 45 F.3d at 1566 ("Foremost [ ] is the policy of preventing inventors from exploiting the commercial value of their inventions while deferring the beginning of the statutory term.")).

In the Federal Circuit's most recent analysis of § 102(b), *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 71 F.3d 1573 (Fed.Cir.1995), the plaintiffs had a patent on a dual-lumen catheter, a device for use in kidney dialysis, and sued the defendant for patent infringement. The defendant answered the complaint and asserted that plaintiffs' patent claims were invalid under § 102(b) because plaintiffs had placed the invention "on sale" more than one year prior to the patent's effective filing date. The court disagreed and found that the transaction at issue was only a "special deal made in an attempt to satisfy the requirements of a licensing agreement, not a sale made on ordinary commercial terms." *Id.* at 1577. Because the court concluded that plaintiffs' sale of the invention was only a sham that did not result in "commercialization" of the invention or place it in the public domain, the court held that no § 102(b) sale had occurred. *Id.*

■ Here, though, this court concludes that Monon's sale of its plate trailer to Continental was a commercialization of the invention, and thus invalidates claims 1 through 4 of the Monon patent. The commercialization of the product is evident from the parties' intentions and actions in late 1983. Clearly, Monon sold Continental one trailer with the intention that if Continental liked the product, it would purchase three hundred more. It was a marketing ploy (and good business) by Monon to give Continental use of the product so that down the line Monon could

make large profits from a volume sale by Continental. As the Federal Circuit explained in *Intel Corp.*, "even free distribution of a prototype may raise the on-sale bar if it is done to solicit a sale." *Intel Corp.*, 946 F.2d at 830 (citing *Stearns v. Beckman Instruments, Inc.*, 737 F.2d 1565 (Fed.Cir. 1984)). Here, the distribution was not for free (it cost $18,490) and it was done to solicit business. Furthermore, the exchange of documents between the parties is evidence that what occurred between Monon and Continental was a sale of a plate trailer, and not some joint venture development as Monon alleges. The parties didn't exchange papers documenting a joint venture relationship. They exchanged sale papers. Later, in December 1984, when the parties finalized the volume purchase, the same forms were employed. Finally, the court concludes that the plate trailer sold to Continental does fully anticipate and embodies claims 1 through 4 of the patent. As stated above, Monon does not dispute that claims 1 through 4 of the Monon patent do read on the trailer sold in late 1983.

Monon makes two arguments to protect its patent: (1) there was no invention until well after the critical date; and (2) the use of the patent was an experimental use. The court addresses each in turn.

■ In its response to Stoughton's motion, Monon first argues that since there was no invention until well after the critical date (Monon puts the invention at October 1984, six months after Continental received the first plate trailer), § 102(b) should not apply. Monon argues that what it transferred to Continental in late 1983 was only an "untested concept." The court disagrees and finds that the product was invented well before the critical date. First of all, reduction to practice is not a requirement of the on-sale bar. *UMC Elec. Co. v. United States*, 816 F.2d 647, 656 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988); *Paragon Podiatry Lab. v. KLM Lab.*, 984 F.2d 1182, 1187 n. 5 (Fed.Cir.1993). As the Federal Circuit made clear in *UMC Elec. Co.*, the thrust of the on-sale inquiry is whether the inventor thought he had a product which could be and was offered to cus-

tomers. *Id.* Therefore, the fact that the plate trailer may not have been built before the critical date does not resolve the issue. Second, the inventor himself testified that prior to January 1984, he had a concept on how to build the plate trailer and was confident that he could put it together. Furthermore, he testified he thought he had a trailer for Continental with the strength necessary to do the job. Therefore, based on this testimony and the evidence of a sale in late 1983, the court rejects any argument that Monon had only an "untested concept" prior to the critical date.

In the alternative, Monon argues that if there was an invention on-sale, the use was primarily for experimental purposes and, thus, 35 U.S.C. § 102(b) does not apply. *See, e.g., Allied Colloids, Inc. v. American Cyanamid Co.,* 64 F.3d 1570, 1574 (Fed.Cir.1995). The court also rejects this argument. First, the court notes that the issue for the court is not: was Continental's use for a bona fide experimental purpose and thus excused? *Tone Bros., Inc. v. Sysco Corp.,* 28 F.3d 1192, 1198 (Fed.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995). Evidence of experimentation, rather, should be considered as part of the totality of the circumstances. *Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1563 (Fed.Cir. 1987). Second, the evidence of experimentation in this case is not so prevalent as to upset the on-sale bar. When Continental took possession of the plate trailer, it had complete control over its use. It paid $18,-640 for the product and placed in its regular fleet. Furthermore, Monon's argument that there was a twelve-month test of the product is unavailing. The inventor himself testified that he never saw the trailer during the time Continental had it and that no one at Monon was instructed or otherwise assigned to monitor it. From this and other testimony, it is clear to the court that the sale of this product to Continental was done simply to induce another much larger sale.

### CONCLUSION

Defendant Stoughton Trailers, Inc.'s Motion for Summary Judgment of Invalidity of Monon Patent Claims 1 through 4 Based Upon the Commercial Exploitation of the Claimed Invention Prior to the Patent's Critical Date is granted.