**CRITIKON, INC., Plaintiff–Cross Appellant,**

v.

**BECTON DICKINSON VASCULAR ACCESS, INC., Defendant–Appellant.**

Nos. 95–1322, 95–1363.

United States Court of Appeals, Federal Circuit.

Aug. 12, 1997.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Sept. 24, 1997.

**1254**

Harry J. Roper, Roper & Quigg, Chicago, IL, argued for plaintiff/cross-appellant. With him on the brief was George S. Bosy. Of counsel on the brief was Madonna M. Malin, Johnson & Johnson, New Brunswick, NJ. Of counsel was Ellen D. Law, Roper & Quigg.

Edward F. Mullowney, Fish & Neave, Palo Alto, CA, argued for defendant-appellant. With him on the brief was Richard M. Barnes, Fish & Neave, New York City. Of counsel on the brief was Leslie Gordon Fagen, Paul, Weiss, Rifkind, Wharton & Garrison, New York City.

Before ARCHER, Chief Judge, RICH, and MAYER, Circuit Judges.

RICH, Circuit Judge.

## DECISION

Becton Dickinson Vascular Access, Inc. (Becton Dickinson) appeals from the April 10, 1995 judgment of the United States District Court for the District of Delaware, No. 93–108–JJF, issuing a permanent injunction in favor of Critikon, Inc. (Critikon) enjoining Becton Dickinson from making, using, selling or offering to sell its infringing safety catheter products in the United States based on U.S. Patent Nos. 4,952,207, reissued as RE34,416, and 4,978,344 (the patents). Following a bench trial, the district court held that: (1) the patents were not invalid; (2) Becton Dickinson had infringed the patents, both literally and under the doctrine of equivalents; (3) the infringement was not willful; (4) Critikon did not engage in inequitable conduct; and (5) Critikon was eligible for injunctive relief. Becton Dickinson appeals the holdings on validity, infringement and inequitable conduct underlying the permanent injunction. Critikon cross-appeals the finding that infringement was not willful. We affirm-in-part and reverse-in-part and remand.

## BACKGROUND

The patents and relevant claims in suit are claims 8, 21, and 56 of U.S. Patent No. RE34,416 (Lemieux reissue patent) and U.S. Patent No. 4,952,207, (original Lemieux patent) and claims 18 and 19 of U.S. Patent No. 4,978,344, (Dombrowski patent). These patents are in the field of intravenous (IV) catheters. IV catheters are thin tubes that are inserted into a vein for the administration of fluids and the like. A needle is used to insert the tube into the vein and then the

needle is withdrawn, leaving the tube in the vein. The patents are specifically directed to safety IV catheters, designed to protect health care workers from accidental needle sticks. They feature a needle guard that automatically moves into position over the tip of the needle as the needle is withdrawn from the IV catheter. For ease of reference, we will refer to the reissue and original Lemieux patents collectively as the "Lemieux patents." Claims were added by the reissue.

Through a series of amended complaints, Critikon filed an infringement action against Becton Dickinson based on the Lemieux patents and the Dombrowski patent. The first such complaint alleged infringement of claim 8 of the original Lemieux patent and subsequently included a motion for preliminary injunction to enjoin Becton Dickinson from making, using or selling its catheter product for the pendency of the suit. On July 16, 1993, the district court granted the motion for preliminary injunction based on claim 8 of the original Lemieux patent. Becton Dickinson immediately filed a notice of appeal and moved us to stay the preliminary injunction pending its appeal. On August 26, 1993, we denied that motion.

In the interim, Critikon amended its complaint to assert a claim for infringement of the Dombrowski patent and, subsequently, the Lemieux reissue patent. Further, Becton Dickinson amended its answer to add the defense that the Lemieux patents were unenforceable because of Critikon's allegedly inequitable conduct during the course of prosecution.

Having obtained a trial date, Becton Dickinson withdrew its appeal to us of the preliminary injunction and, on November 1, 1993, the parties commenced a two week bench trial on liability and damages issues. The district court issued a Memorandum Opinion on July 18, 1994, finding, inter alia, that Becton Dickinson's catheter products infringed claims 8, 21, and 56 of the Lemieux patents and claims 18 and 19 of the Dombrowski patent. Further, the district court held the patents valid and enforceable. Critikon moved for a permanent injunction, and, on April 10, 1995, the district court issued the order enjoining Becton Dickinson that is the subject of this appeal.

## DISCUSSION

### 1. Infringement/Validity

■ We review a district court's judgment for errors of law and clearly erroneous findings of fact. Fed.R.Civ.P. 52(a). The district court found the patents-in-suit not invalid and infringed, both literally and under the doctrine of equivalents. After careful consideration, we discern no clear error in the court's findings of fact or error in its conclusions of law and affirm the district court's findings of no invalidity and infringement.

### 2. Inequitable Conduct

■ On appeal, Becton Dickinson argues that Critikon's failure to disclose U.S. Patent No. 4,834,718 (the McDonald patent) during both the prosecution of the original Lemieux patent and the Lemieux reissue patent constituted inequitable conduct. Becton Dickinson argues that the district court's failure to find intent is contrary to the weight of the evidence. We agree. We hold that the McDonald patent was material to patentability and Critikon should have disclosed it to the Patent and Trademark Office (PTO). But, more importantly, during the reissue proceedings, Critikon should have disclosed that the original Lemieux patent was concurrently involved in the present litigation and that claims of invalidity and inequitable conduct were asserted against the patent. Failure to disclose the McDonald patent and the fact that the Lemieux patent was in litigation was done with an intent to mislead or deceive and rises to the level of inequitable conduct.

■ A determination of inequitable conduct is committed to a district court's discretion. Accordingly, the court's ultimate determination is reviewed for abuse of discretion; the subsidiary factual questions are reviewed for clear error and are not to be disturbed unless we have a definite and firm conviction that a mistake has been committed. *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200, 1215, 18 USPQ2d 1016, 1028 (Fed.Cir. 1991).

A patent applicant's duty to disclose material information to the PTO arises under the general duty of candor, good faith, and honesty embodied in 37 C.F.R. § 1.56(a) (1996). Specifically, applicants have a duty to disclose to the PTO information of which they are aware which is material to the examination of the application. 37 C.F.R. § 1.56(a) (1996). This duty is also applicable to reissue proceedings. 37 C.F.R. § 1.175(a)(7) (1996).

 However, a breach of the disclosure duty alone does not render the patent unenforceable. There must be a showing of inequitable conduct. Inequitable conduct resides in the failure to disclose material information with an intent to deceive or mislead the PTO. *J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1559–60, 223 USPQ 1089, 1092 (Fed. Cir.1984). Once thresholds of materiality and intent have been established, the court conducts a balancing test and determines whether the scales tilt to a conclusion that "inequitable conduct" occurred. *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440, 17 USPQ2d 1834, 1839 (Fed.Cir. 1991). The more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and vice versa. *Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471, 1 USPQ2d 1241 (Fed.Cir.1986).

### A. Intent

 Becton Dickinson argues that the district court ignored the weight of the evidence in holding that Becton Dickinson failed to establish by clear and convincing evidence that the Lemieux patents were unenforceable due to inequitable conduct. Our review of the record leads us to conclude that Critikon failed to cite the McDonald patent and to disclose the ongoing litigation to the PTO with intent to mislead or deceive. Direct evidence of intent or proof of deliberate scheming is rarely available in instances of inequitable conduct, but intent may be inferred from the surrounding circumstances. *J.P. Stevens*, 747 F.2d at 1560, 223 USPQ at 1092. For example, intent may be inferred where a patent applicant knew, or should have known, that withheld information would

be material to the PTO's consideration of the patent application. *Driscoll v. Cebalo*, 731 F.2d 878, 885, 221 USPQ 745, 751 (Fed.Cir. 1984).

A relatively high degree of intent may be inferred under the facts of this case. Critikon was aware of the McDonald Patent. It was aware that the "retaining means" was a point of novelty the examiner relied upon during the course of prosecution. It knew or should have known that the "retaining means" disclosed in the McDonald patent was relevant to a point of novelty in the Lemieux proceedings. And, despite this, it did not disclose the patent or provide a good faith explanation for not disclosing the patent. Furthermore, despite the clear materiality of the ongoing litigation to the reissue proceedings, Critikon never disclosed its existence to the PTO.

Critikon was intimately familiar with the McDonald patent. Both of Critikon's patent counsel who were involved in the prosecution of the Lemieux patents, Mr. Colletti and Mr. York, had reviewed the McDonald patent in detail. On appeal, Critikon argues that Mr. Colletti believed that the reference was not material and that Mr. York had no recollection of the patent. However, at one point Mr. York reviewed the McDonald patent and in handwritten annotations opined that all the claims, except those including the "retaining means," were invalid. Further, there is evidence that he passed these notes on to Mr. Colletti, who cited the McDonald patent to the PTO in several other patent proceedings. If that were not sufficient to infer intent to mislead or deceive, the record indicates that Critikon's counsel was repeatedly confronted with the McDonald patent and its significance over the course of the litigation, which substantially overlapped the Lemieux reissue proceedings.

Critikon knew that the examiner considered the retaining means a point of novelty of the Lemieux patent. The examiner was in direct communication with Critikon and reiterated on at least two occasions the importance of the "retaining means" as a point of novelty in the application. During the course of prosecution of the original Lemieux patent, the examiner twice rejected the applica-

tion's independent claims that did not call for a means for retaining the needle guard together with the catheter hub. Both times, the examiner stated that those claims "lack the structure at the point of novelty to achieve the intended result and are therefore incomplete," and suggested that they be amended to include retaining means for holding the needle guard within the catheter hub until the needle guard was engaged in place over the needle tip. Critikon was aware of the PTO procedures in effect at that time, which required examiners to construe means-plus-function claim limitations broadly to encompass any means for performing the function recited in the means clause.

Contrary to the district court's conclusion and Critikon's argument, Critikon's counsel made no effort to offer a good faith explanation of why McDonald was never cited, but merely offered conclusory statements that the reference was cumulative. The court stated that it "weighed the testimony of both Mr. Yorks and Mr. Colletti and determined that their explanations for not disclosing the McDonald '718 patent were credible under the totality of the circumstances." However, the court does not identify the testimony it relied upon. Our review of the record does not reveal a single instance where Mr. Yorks or Mr. Colletti provided a good faith explanation for the exclusion.

Further, the district court did not address Critikon's failure to disclose the ongoing litigation to the PTO. As evidenced by their participation in depositions, the patent counsel who were handling the reissue proceedings were keenly aware of the litigation and the issues involved prior to the resolution of the reissue proceedings. However, there is no evidence in the record that anyone reported the ongoing litigation to the PTO. Nor is there any evidence as to a good faith explanation as to why it was never reported.

It is axiomatic that "[c]lose cases should be resolved by disclosure, not unilaterally by applicant." *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n,* 958 F.2d 1066, 1076, 22 USPQ2d 1025, 1033 (Fed.Cir.1992). This sentiment is also repeatedly reflected in the Manual of Patent Examining Procedure (MPEP), which, although it does not have the

force of law, is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates. *See Refac Int'l Ltd. v. Lotus Development Corp.,* 81 F.3d 1576, 1584 n. 2, 38 USPQ2d 1665, 1671 n. 2 (Fed.Cir.1996).

> Presumably, applicants will continue to submit information for consideration by the Office in applications rather than making and relying on their own determinations of materiality. An incentive remains to submit the information to the Office because it will result in a strengthened patent and will avoid later questions of materiality and intent to deceive.

MPEP 2001.04 (1994).

■ No single factor or combination of factors can be said always to require an inference of intent to mislead; yet a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish "subjective good faith" sufficient to prevent the drawing of an inference of intent to mislead. A mere denial of intent to mislead (which would defeat every effort to establish inequitable conduct) will not suffice in such circumstances. *FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1116 (Fed.Cir.1987).

## B. Materiality

Information must be disclosed when it is material to patentability. The starting point in determining materiality is the definition of the PTO, which recites, in part, as follows: "information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and ... [i]t refutes, or is inconsistent with, a position the applicant takes in: ... [a]sserting an argument of patentability." 37 C.F.R. 1.56(b)(2)(ii) (1996).

The district court found the McDonald patent was not material because it was substantially different from the claimed invention. The court was "persuaded by the testimony of both expert witnesses that the McDonald [ ] patent teaches a device that is substantially different than that contemplated by the Lemieux patents." However, the court did

not explicitly outline the evidence that it relied upon in drawing this conclusion nor did it address Critikon's failure to disclose the ongoing litigation during the Lemieux reissue proceedings.

The court apparently failed to recognize that although overall the Lemieux device may be substantially different from McDonald, the McDonald patent teaches two features, which the examiner considered central in the prosecution of the Lemieux patents. Briefly, the protective housing of the McDonald device is designed to automatically cover the needle tip for the purpose of preventing accidental needle sticks. The housing is comprised of a long barrel and a guard hub. As the needle is withdrawn from the catheter, the proximal end of the housing engages with a groove on the handle and automatically releases the needle guard that sheaths the needle. Specifically, it teaches a "retaining means" and an automatically, albeit passively, engaged protective housing.

As noted above, the examiner specifically relied on the "retaining means" as a point of novelty. The use of the "retaining means" to achieve automatic positioning is disclosed only in the uncited McDonald patent; it is not disclosed in any other prior art considered by the examiner. Furthermore, there was testimony from Mr. Fischell, Becton Dickinson's expert, to the effect that the McDonald patent is the most relevant art to the "retaining means" limitation.

Specifically, Mr. Fischell indicated that the retaining means were integral to the automatic positioning. In addition, Mr. Fischell indicated that the key features of McDonald were the automatic positioning and the "retaining means." Mr. Colletti reflected this position, and Critikon's knowledge thereof, when he testified that he could not recall any prior art considered by the examiner who allowed the original Lemieux patent that describes a catheter device with the "retaining means". And yet Mr. Colletti relied on the novelty of the "retaining means" and the automatic positioning of the protective housing in his arguments to gain allowance of the patent application. It would appear that the "retaining means" and the automatic positioning aspects of McDonald would have been

material to a reasonable patent examiner under the PTO standard.

Critikon argues that the McDonald device is significantly different for three primary reasons: (1) the McDonald device operates differently; (2) the McDonald device does not feature automatic positioning; and (3) the McDonald device requires a two step procedure while the Lemieux patent requires the protective housing to function without intervention. The first reason is of no moment. A device that operates differently, assuming the McDonald patent operates differently, may nonetheless have relevant features. With regard to the second and third reasons, there is unrefuted testimony that the catheter may be inserted with one hand and, furthermore, the Lemieux patent only requires that the catheter function without intervention in its preferred embodiment. Thus, we find Critikon's arguments without merit.

The district court did not consider whether the litigation relating to the Lemieux patents was material to the Lemieux reissue proceedings. A patent applicant's duty to disclose is not limited to disclosing prior art. A patent applicant must disclose any material information to the PTO. 37 C.F.R. § 1.56(a) (1996). There seems little doubt that the litigation involving the patent in question would be relevant to its reissue proceeding. According to the Manual of Patent Examining Procedure, relevant litigation includes the defenses raised against validity of the patent, or charges of fraud or inequitable conduct in litigation, which would normally be material to the reissue application. MPEP 2001.06(c) (1994).

> Where the patent for which reissue is being sought is, or has been, involved in litigation which raised a question material to patentability of the reissue application, such as the validity of the patent, or any allegations of "fraud", "inequitable conduct", or "violation of duty of disclosure", the existence of such litigation must be brought to the attention of the Office by the applicant.... [T]he defenses raised against validity of the patent, or charges of "fraud" or "inequitable conduct" in the litigation, would normally be "material to pat-

entability" of the reissue application.... As a minimum, the applicant should call the attention of the Office to the litigation, the existence and the nature of any allegations relating to validity and /or "fraud", or "inequitable conduct" relating to the original patent, and the nature of the litigation materials relating to these issues.

MPEP 2001.06(c) (1994); *see also,* MPEP 1442.04 (1994). In the interests of consistent claim interpretation, it may be appropriate to suspend such proceedings until such litigation is resolved.

In summary, Critikon failed to disclose the McDonald patent, which it should have known was material, but, more importantly, it failed to disclose the ongoing litigation in the reissue proceedings. Given the materiality and the failure at any point to offer a good faith explanation of the pattern of nondisclosure, an intent to mislead may be inferred. We reverse the district court's finding with regard to inequitable conduct and hold the original Lemieux patent and the Lemieux reissue patent unenforceable.

## 3. Willful Infringement

■ The district court's finding that infringement was not willful is one of fact, and subject to the "clearly erroneous" standard of review. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.,* 932 F.2d 1453, 1459, 18 USPQ2d 1842, 1847 (Fed.Cir.1991). We must determine whether the district court clearly erred in finding that Critikon failed to meet its burden of proving willfulness by clear and convincing evidence. *BIC Leisure Prods., Inc. v. Windsurfing Int'l Inc.,* 1 F.3d 1214, 1222, 27 USPQ2d 1671, 1678 (Fed.Cir.1993). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 926 F.2d 1161, 1164, 17 USPQ2d 1922, 1925 (Fed.Cir.1991). After careful review of the record, we hold that the district court clearly erred in finding that infringement was not willful.

■ The district court based its determination that there was no willful infringement on the finding that, while Becton Dickinson may have been aware of Critikon's patents and the potential for infringement, it reasonably relied on opinion of counsel, it could have independently developed the infringing catheter product, and the field was rapidly developing. On appeal, Critikon argues that while the court correctly found that Becton Dickinson was "imprudent" and "less than cautious", it erred in its ultimate conclusion of nonwillfulness.

Becton Dickinson argues that it relied in good faith on eight separate written opinions of counsel. The eight opinions, obtained between January 1991 and August 1993, each reiterated that the infringing catheter product did not infringe the claims of the Lemieux or Dombrowski patents. Only four of these opinions were received prior to placing the infringing catheter product on the market in the fall of 1991. Critikon correctly argues that the district court could only rely on those four opinions received prior to marketing its infringing catheter product in determining the reasonableness of Becton Dickinson's actions. *Underwater Devices v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1390, 219 USPQ 569, 576–77 (Fed.Cir.1983).

These four opinions did not discuss the infringing catheter product. Rather, they relate to a short-nosed device that was eventually discarded by Becton Dickinson. In the short nosed device, no physical contact occurs between the nose and the catheter hub, thus, it might reasonably fall outside the scope of the claims of both the Lemieux patents and the Dombrowski patent. Before commercialization, Becton Dickinson apparently shifted to the long nose design when the short nosed design proved dangerous and commercially unacceptable. Significant design changes, in most instances, would require a new opinion of counsel. *Ryco, Inc. v. Ag–Bag Corp.,* 857 F.2d 1418, 8 USPQ2d 1323 (Fed.Cir.1988).

In addition to relating to the short-nosed catheter, the four opinions are, as Critikon argues, superficial and conclusory in nature. There is no analysis of specific claims, no

interpretation of claim language, no discussion of the means-plus-function claim limitations and no meaningful discussion of the prosecution history.

Critikon further argues that the district court erred by failing to recognize that Becton Dickinson adopted features from the Lemieux and Dombrowski patents. We agree that the court appears to have overlooked overwhelming evidence in the record that Becton Dickinson's efforts to develop a safety catheter were a failure. In 1991, Becton Dickinson engineers could not precisely identify the problems associated with their device. Becton Dickinson asserts that it finalized the basic device by December 1989, and yet Becton Dickinson's engineers were reporting that there is "no doubt that the results are extremely negative" over a year later. It must be more than coincidence that Becton Dickinson managed to commercialize its design by adopting features disclosed in the Dombrowski patent and the Lemieux patents soon after it became aware of their existence.

Based on the record before us, we hold that the district court clearly erred in finding that Becton Dickinson was not willfully infringing the claims of the Dombrowski patent and the Lemieux patents. Becton Dickinson had knowledge of the patents in suit, used this knowledge to develop its own commercial model, and demonstrated utter disregard for the need to obtain competent legal advice. The fact that moving products from development to commercialization is a rapid process is insufficient rationalization to warrant this conduct. Clearly Becton Dickinson had the opportunity to obtain four opinions of counsel before marketing the infringing product. Thus, we must conclude that the district court clearly erred in not finding willful infringement.

## CONCLUSION

In conclusion, we affirm the district court's holding that the Lemieux patents and the Dombrowski patent are not invalid and infringed. We reverse the court's holding that the Lemieux patents are enforceable and hold them unenforceable because of inequitable conduct. We reverse the holding that

infringement was not willful. We remand to the district court for further proceedings in accordance with this opinion.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.*