**AVENTIS CROPSCIENCE N.V., Plaintiff,**

v.

**PIONEER HI–BRED INTERNATIONAL, INC., and DOW AGROSCIENCES, LLC, Defendants.**

No. 1:00 CV 00463.

United States District Court, M.D. North Carolina.

June 20, 2003.

Timothy G. Barber, Bradley Clayton Morris, Womble Carlyle Sandridge & Rice, Charlotte, NC, Eric H. Weisblatt, Regis F. Slutter, Barbara W. Walker, Ronni S. Jillions, Susan M. Dadio, Albert Tramposch, Catherine B. Richardson, H. Jonathan Redway, David M. Schlitz, Ryan P. Page, Burns Doane Swecker & Mathis, L.L.P., Alexandria, VA, Allen Robert Baum, Burns Doane Swecker & Mathis, Durham, NC, for Plaintiff.

William Kearns Davis, Daniel Alan M. Ruley, Bell Davis & Pitt, P.A., Winston-Salem, NC, William H. King, Jr., Mcguire Woods, LLP, Richmond, Va, Daniel J. Cosgrove, Zarley Mckee Thomte Voorhees & Sease, P.L.C., Des Moines, Ia, Leora Ben-Ami, Thomas F. Fleming, Howard Suh, Melissa Mandrgoc, Christopher T. Jagoe, Oliver Bennett, Clifford Chance Rogers & Wells, Llp, New York, NY, Kurt E. Lindquist, II, Charlotte, NC, for Defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

### I. INTRODUCTION

This matter is currently before the Court on Defendants' Joint Motion for a Moratorium on Discovery Related to Aventis' Infringement Claims [Document # 251], Pioneer Hi–Bred International, Inc.'s Motion for Summary Judgment of

Unenforceability, Invalidity and Non–Infringement of the Patents–In–Suit Based Upon Collateral Estoppel [Document # 254], and Defendant Dow Agrosciences LLC's Motion for Summary Judgment of Collateral Estoppel [Document # 257]. For the reasons explained below, Defendants' Motions for Summary Judgment are GRANTED and all claims asserted by Plaintiff against Defendants are hereby DISMISSED. Additionally, Defendants' Joint Motion for a Moratorium on Discovery Related to Aventis' Infringement Claims is DISMISSED as moot.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The underlying dispute in this case concerns Plaintiff Aventis CropScience N.V.'s ("Plaintiff" or "Aventis") allegations that four United States Letters Patents, Nos. 5,254,799; 5,545,565; 5,767,372 and 6,107,-546 (collectively, the "patents-in-suit") have been infringed upon by Defendants Pioneer Hi–Bred International, Inc. ("Pioneer") and Dow AgroSciences LLC ("Dow") (collectively, "Defendants"). Plaintiff is the assignee of the patents-in-suit. (Second Am. Compl. ¶ 4.) The patents-in-suit relate to genetic transformation vectors that allow the expression of an insecticidal endotoxin in certain hybrids of corn. Two types of corn hybrids have been implicated here. The first corn hybrid involves the insertion of a truncated fragment of DNA called Cry1A(b) which is found in a bacteria known as *Bacillus thuringiensis* ("Bt"). The Cry1A(b) fragment allows the Bt bacteria to create a protein toxic to certain insect pests of the genius *Lepidoptera*. The DNA fragment is placed in corn cells in order to create a corn hybrid capable of resisting the *Lepidoptera* insects. This insect resistant corn hybrid is known as Cry1A(b). The second product in question involves a similar Bt corn hybrid containing a fragment of DNA protein from Bt bacteria called Cry1F which, inserted into corn, creates another insect resistant corn hybrid known as Cry1F.

Plaintiff alleges that Defendants sell and induce sales of the aforementioned Bt corn hybrids in violation of the patents-in-suit. Plaintiff claims that Pioneer advertises and sells the Cry1A(b) corn hybrid under the brand name YieldGard® (MON810).[1] (Aventis Cropscience N.V.'s Combined Opp. to Dow Agrosciences, LLC's Mot. for Summ. J. of Collateral Estoppel and Pioneer Hi–Bred International, Inc.'s Mot. for Summ. J. of Unenforceability, Invalidity, and Non–Infringement of the Patents–In–Suit Based Upon Collateral Estoppel at 3.) Plaintiff also claims that Defendants Pioneer and Dow have conducted research and development into the Cry1F corn hybrid and are petitioning to gain non-regulated status for the Cry1F hybrid so that it may be available for sale. (Pl's Br. Opp. Mot. Transfer at 4.) Plaintiff argues that this activity is also in violation of the patents-in-suit.

Plaintiff brought suit on May 5, 2000, against Defendants for what Plaintiff alleges are sales and development activities that infringe on the patents-in-suit related to the Bt corn hybrids. However, shortly

---

1. The accused MON810 products were derived from the same corn lines developed by Monsanto to make the MON810 corn products accused of infringement in the collateral Eastern District of Missouri case, discussed *infra*. (Aventis CropScience N.V.'s Combined Opp. to Dow Agrosciences, LLC's Mot. for Summ. J. of Collateral Estoppel and Pioneer Hi–Bred International, Inc.'s Mot. for Summ.

J. of Unenforceability, Invalidity, and Non–Infringement of the Patents–In–Suit Based Upon Collateral Estoppel at 3.) Prior to the filing of Monsanto's action in the Eastern District of Missouri, Monsanto and Pioneer entered into a commercial license agreement that allowed Pioneer to make and sell MON810 insect-resistant corn. (*Id.* at 3–4.)

after Aventis filed the instant action, Monsanto Company ("Monsanto") filed a separate declaratory judgment action against Aventis in the Eastern District of Missouri on December 4, 2000, relating to MON810 Yieldgard ® and Plaintiff's claims of infringement against Monsanto in a case known as *Monsanto v. Bayer Bioscience, N.V.*, 264 F.Supp.2d 852 (E.D.Mo. 2002) (the "Missouri Action"). The collateral Monsanto action concerned whether the same four Aventis patents-in-suit in the instant matter are valid or enforceable. The Eastern District of Missouri issued its final memorandum and order in that case on December 27, 2002. Ultimately, as discussed in Section III *infra*, the *Monsanto* court held that all of Bayer's patent claims at issue in the case were unenforceable, while individual patents were also either non-infringed or invalid. On January 6, 2003, Aventis filed a notice of appeal seeking a review in the Federal Circuit Court of Appeals of all of the *Monsanto* court's orders and judgments. (Mem. in Supp. of Def.'s Mot. for Summ. J. of Collateral Estoppel, Exh. E at 1–2.)

Following its notice of appeal in the Missouri Action, Aventis then moved for a complete stay of the instant case before this Court pending its appeal of the Missouri Action, which the Court denied after a hearing held on April 1, 2003. Additionally, relying on the decision by the *Monsanto* court, Defendants Pioneer and Dow filed separate motions for summary judgment, on January 10, 2003, and January 13, 2003, respectively, asserting that the doctrine of collateral estoppel precludes Aventis from re-litigating identical issues in this proceeding. Additionally before the Court is Defendants' Joint Motion for a Moratorium on Discovery Related to Aventis' Infringement Claims, filed on January 10, 2003. The Court held a hearing on Defendants' Motions for Summary Judgment on April 11, 2003.

## III. FINDINGS OF THE EASTERN DISTRICT OF MISSOURI IN *MONSANTO v. BAYER BIOSCIENCE, N.V.,* CASE NO. 4:00CV01915 ERW

In *Monsanto*, Plaintiff Monsanto sought a declaratory judgment that its MON810 Yieldgard ® corn products did not infringe the claims of four United States patents, United States Patent No. 5,254,799 ("the '799 patent"), United States Patent No. 5,545,565 ("the '565 patent"), United States Patent No. 5,767,372 ("the '372 patent"), and United States Patent No. 6,107,-546 ("the '546 patent"), the same four patents-in-suit in the instant matter, owned by Defendant Bayer Bioscience.[2] In response, Bayer counterclaimed that Monsanto infringed on claims 1–5 of the '799 patent, claims 1–8 and 12 of the '565 patent, claims 1–5, 13, and 18 of the '372 patent, and claims 1–7 of the '546 patent. The *Monsanto* court issued three separate Memoranda and Orders to establish its findings and holdings. Specifically, the December 13, 2002 Memorandum and Order held that the '799 patent was not infringed, and that the '546 patent and claims 13 and 18 of the '372 patent were invalid based upon the preclusive effect of collateral estoppel stemming from a prior lawsuit that occurred in the District of Connecticut, *Plant Genetic Systems N.V. v. DeKalb Genetics Corp.*, 175 F.Supp.2d 246 (D.Conn.2001) ("the Connecticut Action").[3] After it held a *Markman* hear-

**2.** On June 11, 2002, Aventis CropScience N.V. was renamed Bayer Cropscience N.V., which the shareholders subsequently changed to Bayer Bioscience N.V. on July 9, 2002. Nevertheless, this Court will refer to Plaintiff as Aventis in its discussion of the merits of the action currently before the Court.

**3.** Plant Genetic Systems N.V. was a precursor entity to Plaintiff Aventis, and DeKalb Genet-

ing[4] to construe certain terms of the remaining asserted claims, the *Monsanto* court issued the December 17, 2002 Memorandum and Order, which held that the '565 patent and claim 4 of the '372 patent were not infringed. Ultimately, on December 27, 2002, the *Monsanto* court held that the '799 patent was unenforceable because of Bayer's inequitable conduct, and consequently, all descendant patents, to include claims 1–3 and 5 of the '372 patent were unenforceable as a result. The Court notes that it will discuss the findings of the Eastern District of Missouri in the Missouri Action to the extent that the Court may elect to adopt the findings of the Eastern District of Missouri as its own on the basis of collateral estoppel as asserted by both Pioneer and Dow in their respective Motions for Summary Judgment.

### A. Non–Infringement of '799 Patent Based Upon the Effect of Collateral Estoppel of the Connecticut Action

After the Markman hearing, the *Monsanto* court issued its first Memorandum and Order on December 13, 2002, in which it held that the Connecticut Action precluded the re-litigation in the Missouri Action of the claims of infringement of the '799 patent, and the '546 patent, and claims 13 and 18 of the '372 patent. In the Connecticut Action, the court found that the relevant patent[5], belonging to Aventis' predecessor, Plant Genetic Systems, N.V., ("PGS"), was not infringed upon because it was limited to dicotyledonous plants, and did not apply to monocotyledonous plants ("monocots") such as corn.[6] *Plant Genetic Sys., N.V., v. DeKalb Genetics Corp.*, 175 F.Supp.2d 246, 270 (D.Conn.2001). Because all of the accused products in the Connecticut Action were monocots, the court in the Connecticut Action held that DeKalb, now a subsidiary of Monsanto, did not infringe the '236 patent. *Id.*

Relying upon the prosecution history of the '236 patent, which determined that monocots were not susceptible to transformation by Agrobacterium, the *Monsanto* court found that Bayer, as its predecessor corporation Plant Genetic Systems, N.V., ("PGS") had a full and fair opportunity to litigate the question of whether corn was susceptible to transformation by the Agrobacterium in the Connecticut Action. *Monsanto v. Bayer Bioscience, N.V.*, No.

ics Corp. is a wholly-owned subsidiary of Monsanto. (Pioneer Hi–Bred International, Inc.'s Mem. of Law in Supp. of Its Mot. for Summ. J. of Unenforceability, Invalidity and Non–Infringement of the Patents–In–Suit Based Upon Collateral Estoppel at 6.)

**4.** At a *Markman* hearing, a court must examine and resolve disputes over the meaning and scope of the claim language in the patent. *Markman v. Westview Instruments*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

**5.** The Connecticut Action involved United States Patent No. 5,561,236 (the '236 patent), which involved herbicide-resistant transgenic plant cells and plants. The '799 patent in the Missouri Action and in the instant case involves insect-resistant transgenic plant cells, plants, and seeds. The *Monsanto* court found that while there was no precedent in which a court gave "preclusive effect to a determination made in a case involving patents not in the same family," it did not foreclose the court from doing so when the elements of collateral estoppel were met. *Monsanto v. Bayer Bioscience, N.V.*, No. 4:00CV01915 ERW, slip op. at 12 (E.D.Mo. Dec. 13, 2002).

**6.** A cotyledon is a leaf of the embryo of a seed plant, which upon germination, either remains in the seed or emerges, enlarges, and becomes green. A dicotyledonous plant is a flowering plant with two cotyledons that usually appear at germination, while a monocotyledonous plant only has one. Webster's New International Dictionary (3d ed.1971).

4:00CV01915 ERW, slip op. at 12 (E.D.Mo. Dec. 13, 2002). Accordingly, the *Monsanto* court relied upon the doctrine of collateral estoppel to preclude Aventis from re-litigating the identical question in connection with the '799 patent, which is at issue in both the Missouri Action and the instant case. *Id.* Because the '799 patent claims a certain type of plant cell susceptible to transformation by Agrobacterium, the court noted that if Bayer could not demonstrate that corn was susceptible to transformation by Agrobacterium as of the time of the filing of the '799 patent in January 1986, then it could not "benefit from advancements in scientific technology that occurred after the '799 patent was filed" in order to include corn within the protection of the '799 patent. *Id.* at 11. As already noted, because Bayer "vigorously litigated" the identical issue, that is whether corn was susceptible to transformation by Agrobacterium, in the Connecticut Action with respect to the '236 patent, which was filed in March 1987, the *Monsanto* court found that Bayer was collaterally estopped from re-litigating the issue of whether corn was susceptible to transformation by Agrobacterium with respect to the '799 patent, which was filed before the '236 patent. Ultimately, the *Monsanto* court held that because of the preclusive effect of the findings in the Connecticut Action, Bayer could not relitigate the issue. Accordingly, the *Monsanto* court gave collateral estoppel effect to the determination that corn was not susceptible to transformation by the Agrobacterium, and therefore, Monsanto did not infringe upon the '799 patent. *Id.* at 12.

**B.  Invalidity of the '546 Patent and Claims 13 and 18 of the '372 Patent Based Upon the Effect of Collateral Estoppel of the Connecticut Action**

With regard to the '546 patent and claims 13 and 18 of the '372 patent, the court in the Missouri Action also held in its December 13, 2002 Memorandum and Order that they were invalid based upon collateral estoppel. The *Monsanto* court again relied upon the Connecticut Action in which Aventis' predecessor corporation, PGS, litigated whether its cell claims were enabled[7] under 35 U.S.C. § 112. *Id.* at 16. That statute provides that the patent specification "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . ." 35 U.S.C. § 112. According to the Federal Circuit, to be enabling, the patent specification must teach those skilled in the art of how to make and use the full scope of the claimed invention without undue experimentation. *Genentech, Inc. v. Novo Nordisk A/S,* 108 F.3d 1361, 1365 (Fed.Cir.1997) (internal citations and quotations omitted).

In litigating the enablement issue, the key question at trial was whether, as of March 1987, the date of filing of the '236 patent, any methodology existed by which the Bt or Bt2 gene could be stably integrated into monocots. *Monsanto v. Bayer Bioscience, N.V.,* No. 4:00CV01915 ERW, slip op. at 16 (E.D.Mo. Dec. 13, 2002). Based on clear and convincing evidence that scientists could not genetically engi-

7. "Enablement," as used in context of patent specification, refers to statutory requirement that patent specification contain written description of claimed invention and manner and process of making and using that invention in such full, clear, concise, and exact terms that any person skilled in art to which invention pertains or with which it is most nearly connected can make and use invention. *In re Wright,* 999 F.2d 1557, 1561 (Fed.Cir. 1993).

neer monocots as of March 1987, the court in the Connecticut Action found that claims 1–5 and 10–11 of the '236 patent were invalid due to lack of enablement. *Id.* at 17.

Since both the '546 and '372 patents were filed in January of 1986, the *Monsanto* court examined whether Bayer, in asserting that an infringement had taken place, could argue that one who is skilled in the art could have genetically engineered corn by integrating the Bt or Bt2 gene into corn as of January 1986. *Id.* at 18. Based upon the findings in the Connecticut Action that corn could not be transformed without undue experimentation as of March 1987, the *Monsanto* court concluded that Bayer was collaterally estopped from re-litigating the identical issue in the Missouri Action with regard to whether it could have done so as of January 1986. *Id.* Because the court in the Connecticut Action had already determined the issue, and Bayer had fully and fairly litigated it in that proceeding, the *Monsanto* court found that Bayer was estopped from relitigating the issue in the Missouri Action. Accordingly, the *Monsanto* court held that the '546 patent and claims 13 and 18 of the '372 patent were invalid based upon the preclusive effect of collateral estoppel. *Id.* at 19.

C.   Non–Infringement of the '565 Patent and Claim 4 of the '372 Patent

As to the December 17, 2002 Memorandum and Order granting summary judgment to Monsanto because it had not infringed upon the '565 patent or claim 4 of the '372 patent, the court first noted that all of Bayer's asserted claims were limited to the Bt2 protein. *Monsanto v. Bayer Bioscience, N.V.*, No. 4:00CV01915 ERW, slip op. at 3 (E.D.Mo. Dec. 17, 2002).

However, the parties disputed the construction of the term "Bt2." *Id.* at 2. After a *Markman* hearing, the court adopted Monsanto's proposed construction of "Bt2" which limited Bayer to the berliner 1715 strain of the Bt bacterium. *Id.* at 1. Because Monsanto's scientists used the *kurstaki* HD–1 strain of Bt in Mon810 corn, and not the berlinger 1715 strain, the court found that Monsanto's gene did not fall within the court's claim construction of Bt2 so as to constitute an infringement. *Id.* at 3. Accordingly, the court concluded that there was no genuine of issue of material fact regarding whether Monsanto infringed upon the '565 patent or claim 4 of the '372 patent. *Id.*

D.   Unenforceability of the '799 Patent, '565 Patent, '372 Patent, and '546 Patent Based Upon Inequitable Conduct by Aventis

█    Finally, on December 27, 2002, the *Monsanto* court issued a Memorandum and Order which analyzed the remaining claims, claims 1–3 and 5 of the '372 patent.[8] *Monsanto v. Bayer Bioscience, N.V.*, 264 F.Supp.2d 852 (E.D.Mo.2002). In its analysis, the court noted that the United States Patent and Trademark Office ("PTO"), after several rejections of Bayer's '799 patent application, finally allowed Bayer's claims that ultimately issued as the '799 patent. *Id.* at 854—55. Specifically, the PTO, in previously rejecting the '799 patent, insisted that Bayer limit its application to the Bt2 gene and tobacco plants because Bayer provided insufficient guidance on how to extrapolate their methods to all Bt genes. *Id.* at 854, 855. After the April 1991 rejection by the PTO, Stefan Jansens, head of Bayer's entomology group, submitted a declaration to the PTO

---

**8.** Even though the only remaining claims were claims 1–3 and 5 of the '372 patent, the *Monsanto* court held that all of the patents involved in the Missouri Action were unenforceable based upon its finding of inequitable conduct.

designed to convince the PTO that Bayer's claims should not be limited to truncated Bt2 genes in tobacco plants. *Id.* at 855. He declared that the test results "demonstrate that any truncated Bt2 gene can generally be used to provide an insect controlling amount of the encoded Bt polypeptide toxin in generally any plant transformed with the truncated Bt gene." *Id.* at 856. His declaration, which led to the *Monsanto* court's finding of inequitable conduct[9], referred to positive test results for controlling insects using truncated Bt in tobacco, tomato, and potato plants, but the *Monsanto* court found that Jansens did not disclose negative results regarding cabbage, cotton, corn[10], and occasionally potatoes and tomatoes to the PTO. *Id.* at 856–57.

The *Monsanto* court supported its finding of inequitable conduct by explaining that patent applicants have a duty of candor, good faith, and honesty towards the PTO in prosecuting patent applications. *Id.* at 858 (*citing Life Techs., Inc. v. Clontech Labs., Inc.,* 224 F.3d 1320, 1324 (Fed. Cir.2000)). A breach of this duty is considered inequitable conduct, and a court may rule patents tainted by inequitable conduct, even though the patents may be valid and even infringed. *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir. 1995). In conducting an inequitable conduct inquiry, the *Monsanto* court engaged in a three-step process. First, the court asked whether Monsanto made a threshold showing that Bayer's false declaration was material. *Id.* at 858–59 (*citing Monon*

*Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1261 (Fed.Cir.2001)). Second, the court decided that the false declaration was carried out with the intent to deceive the PTO. *Id.* at 858–59 (*citing Monon Corp.,* 239 F.3d at 1261). Finally, because Monsanto established both materiality and intent, the court weighed its factual findings to make an equitable determination whether to deny enforcement of the patents-in-suit. *Id.* at 858–59 (*citing Monon Corp.,* 239 F.3d at 1261).

The *Monsanto* court first examined whether Monsanto made a threshold showing that Bayer's false declaration was material. As the court noted:

Indeed, although Bayer argues that the data in the Jansens declaration is not material because Monsanto has not proven that a nexus exists between the data Jansens left out and the pending patent claims, it defies logic and reason to believe that a reasonable examiner would not find this information important-especially when one considers that Jansens himself acknowledged in his deposition that he submitted his declaration to the PTO for the purpose of persuading the Office that Bayer's pending patent claims should not be limited to tobacco or to the Bt2 gene.... The only reasonable conclusion the Court may draw-in light of the PTO's persistent belief before the Jansens declaration that the pending patent claims were not enabling for anything but the Bt2 gene and tobacco-is that the negative results

**9.** When fraud or inequitable conduct is proven, a patent is unenforceable rather than invalid. *Korody–Colyer Corp. v. Gen. Motors Corp.,* 760 F.2d 1293, 1294 n. 1 (Fed.Cir. 1985). "Fraud on the PTO may result in a holding of invalidity, the equivalent of permanent nonenforceability." *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1550 n. 1 (Fed.Cir.1983). There is no practical significant difference between a holding of invalidi-

ty and one of unenforceability. *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.,* 747 F.2d 1553, 1560 (Fed.Cir.1984).

**10.** The *Monsanto* court noted that the record was not clear whether Aventis was aware of the negative results on corn before its representative signed the declaration, but it is clear that it did not disclose this information to the PTO. *Id.* at 9.

Monsanto has brought to light would be highly important to a reasonable examiner. *Monsanto v. Bayer Bioscience, N.V.*, 264 F.Supp.2d 852, 860 (E.D.Mo.2002). Accordingly, once the court concluded that Jansens' false declaration submitted by Bayer was material, the second step of the process dictated that the court determines if the false declaration was carried out with the intent to deceive the PTO. *Id.* at 15.

The *Monsanto* court explained that the intent necessary to establish inequitable conduct is based on a sliding scale related to the materiality of Bayer's false declaration. *Abbott Labs. v. Torpharm, Inc.*, 300 F.3d 1367, 1379 (Fed.Cir.2002). Thus, the more material the conduct is, the less evidence of intent is needed to prove the defense. *Monsanto v. Bayer Bioscience, N.V.*, 264 F.Supp.2d 852, 861 (E.D.Mo. 2002). The court found that the "inference of intent to deceive the PTO ... arises from Bayer's affirmative act of submitting a false affidavit, its misleading character, and the inability of the patent examiner to investigate the facts." *Id.* at 861 (citation omitted). Moreover, the court noted that "[t]he evidence clearly and convincingly supports the inference that Jansens left negative results on cabbage and cotton out of his declaration because he was afraid the PTO would stick to its original assessment of Bayer's pending claims." *Id.* at 861–62. As a result, the court found that Bayer had intended to deceive the PTO when it submitted Jansens' false declaration. *Id.* at 861.

Finally, the court weighed its factual findings on the issues of materiality and intent to deceive in order to make an equitable determination as to whether the patents were enforceable. The court stated:

Filing a false affidavit is different from most of the inequitable conduct cases, which typically involve a scientist failing to disclose a piece of prior art.... A party prosecuting a patent wrongfully acquires a benefit when it deceives the Patent Office by making representations that are knowingly false or misleading.... Valuable protections are awarded to successful applicants, but no protection should be granted to anyone who intentionally files a false affidavit that would likely influence a reasonable examiner.

*Id.* at 861. Because of these findings, the *Monsanto* court declared that Aventis' '799 patent was tainted by inequitable conduct. *Id.* Notably, the court went further and found "by clear and convincing evidence[,] [the '565, '546, and '372 patents also at issue] in [the Missouri Action] are unenforceable because they are direct descendants of the '799 patent. Although only claims 1–3 and 5 of the '372 patent are remaining in [the Missouri Action], this holding applies to all of the patents-in-suit." [11] *Id.* Accordingly, the *Monsanto* court granted Monsanto's Motion for Summary Judgment of Inequitable Conduct and specifically applied its holding to the '372, '546, '565, and '799 patents. *Id.* at 861–62.

As a result of the *Monsanto* court's rulings, Defendants argue that in the instant matter no triable issues of fact remain for this Court to decide because all of the patents-in-suit have been adjudicated by a federal court in the Missouri Action and found to be unenforceable, and invalid or not infringed upon by the accused products in this action. The Court will there-

---

**11.** Notably, this holding applies to all of the patents-in-suit to include the '372, '565, '546, and '799 patents, even though the only claims remaining before the *Monsanto* court at the time it examined the issue of inequitable conduct were claims 1–3 and 5 of the '372 patent.

fore examine Defendants' argument that the doctrine of collateral estoppel as applied to the Missouri Action precludes the relitigation of whether Defendants infringed upon the '372, '546, '565, and '799 patents in the instant matter.

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court is not "'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting *Schuylkill & Dauphin Imp. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867, 872 (1871)). In considering a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party, in this case, Plaintiff, and accord that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield*, 67 F.3d 53, 56 (4th Cir.1995), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). Moreover, the Court should not grant a motion for summary judgment "'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs.*, 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Nevertheless, a mere scintilla of evidence is insufficient to withstand a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. There must be evidence "on which the jury could reasonably find for the plaintiff." *Id.* With this standard in mind, the Court must evaluate the merits of Plaintiff's claims to determine whether summary judgment in favor of Defendants is proper.

### B. Defendants' Motions for Summary Judgment

Defendants contend that the judgments in the case *Monsanto Co. v. Bayer Bioscience N.V.*, Case No. 4:00CV01915 ERW extinguish all of Aventis' patent infringement claims against them in the instant matter based upon the doctrine of collateral estoppel. Defendants note that the court in the Missouri Action issued a series of summary judgment Memoranda and Orders which have resulted in several findings including: (1) on December 27, 2002, that the patents-in-suit are unenforceable in their entirety due to the inequitable conduct committed by Aventis before the United States Patent Office in the prosecution of the applications that led to the issuance of the '799 patent, and ultimately the issuance of the '565, '372, and '546 patents; (2) on December 17, 2002, that the asserted claims of the '546 patent and claims 13 and 18 of the '372 patent are invalid for lack of enablement under 35 U.S.C. § 112; (3) on December 17, 2002, that the asserted claims of the '799 patent are not infringed by any insect-resistant corn hybrid; and, (4) on December 13, 2002, that the asserted claims of the '565 patent and claim 4 of the '372 patent are not infringed by Monsanto's, and its licensees', Yieldgard® (MON810) insect resistant corn hybrids. As a result of the Missouri Action, Defendants argue that no triable issues of fact remain for this Court to decide because all of the patents-in-suit have been adjudicated by a federal court and found to be unenforceable, and invalid or not infringed upon by the accused prod-

ucts in this action. Accordingly, Defendants rely on the doctrine of collateral estoppel, or issue preclusion, to support their position.

### 1. The Law of Collateral Estoppel

■ The Missouri Action was a patent infringement case. The Court, then, relies upon the federal law of collateral estoppel to decide this motion because patent infringement cases are suits arising under federal law. 28 U.S.C. § 1338. Collateral estoppel, also known as issue preclusion, shields a defendant from having to litigate issues that have been fully and fairly tried in a previous action and decided adversely to a party. *Comair Rotron, Inc. v. Nippon Densan Corp.,* 49 F.3d 1535, 1537 (Fed.Cir.1995). In the patent infringement context, the legal standard for determining whether a patentee is collaterally estopped from asserting its alleged patent right was established by the Supreme Court in *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The Supreme Court ruled that "once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles of collateral estoppel." *Mendenhall v. Barber–Greene Co.,* 26 F.3d 1573, 1577 (Fed.Cir. 1994) (summarizing the Supreme Court's holding in *Blonder–Tongue* ). Because unenforceability is permanent invalidity, an unrelated accused infringer may likewise take advantage of an unenforceability decision under the collateral estoppel doctrine. *Gen. Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1413 (Fed.Cir.1994) ("The principle of *Blonder–Tongue* . . . respecting collateral estoppel also applies to unenforceability.").

■ Application of *Blonder–Tongue,* being an issue of patent law, is a matter within the exclusive jurisdiction of the Federal Circuit Court of Appeals and hence is subject to its law. *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.,* 170 F.3d 1373, 1381 n. 4 (Fed.Cir.1999). However, because the application of general collateral estoppel principles is not a matter within the exclusive jurisdiction of the Federal Circuit, this Court must apply the law of the circuit in which the district court sits, that is the Fourth Circuit. *Hartley v. Mentor Corp.,* 869 F.2d 1469, 1471 n. 1 (Fed.Cir.1989). Collateral estoppel is appropriate in this circuit "where the identical issue was 'actually litigated, that is, contested by the parties and submitted for determination by the court,' where the issue was 'actually and necessarily determined by a court of competent jurisdiction,' " and where preclusion does not work an unfairness in the second trial. *Swentek v. USAIR, Inc.,* 830 F.2d 552, 561 (4th Cir.1987) (quoting *Otherson v. Dep't of Justice,* 711 F.2d 267, 273 (D.C.Cir.1983)). Specifically, an opposing party is estopped when the defendant establishes five elements: (1) the issue precluded must be identical to the one previously litigated; (2) the issue must have been actually decided in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. *Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998) (citing *Ramsay v. INS,* 14 F.3d 206, 210 (4th Cir. 1994)). Nevertheless, the court need not automatically accept a plea of estoppel. *Blonder–Tongue,* 402 U.S. at 332–33, 91 S.Ct. at 1445. Rather, "the court in the second litigation must decide in a principled way whether or not it is just and equitable to allow the plea of estoppel in the case before it." *Id.* at 334, 91 S.Ct. at

1445. The principled way must be illuminated by "any evidence showing why an estoppel should not be imposed ...." *Id.* at 350, 91 S.Ct. at 1454. It is important to note that the collateral estoppel standard promulgated by the Federal Circuit Court of Appeals yields an identical result. *Sun-Tiger, Inc. v. Scientific Research Funding Group,* 189 F.3d 1327, 1333 (Fed.Cir.1999) ("[W]hether [the application of collateral estoppel is] treated as a matter governed by Federal Circuit law, or by Fourth Circuit law, the result is the same.").

### 2. Preclusive Effect of the Missouri Action

■ In the instant matter, the parties do not dispute whether the issues are identical to the ones previously litigated [12], whether the issues were actually decided in a prior proceeding, or whether the determination of the issues was a critical and necessary part of the decision in the prior proceeding. As a result, the Court must only examine (1) whether Aventis had a full and fair opportunity to litigate the issues in the Missouri Action; and, (2) whether the prior judgment was final and valid. Specifically, Aventis asserts that Defendants cannot establish that Aventis was given a full and fair opportunity to litigate the issue of inequitable conduct in the Missouri Action.[13] Plaintiff also seems to contest whether the Missouri Action was a final and valid judgment. Moreover, Aventis contends that applying the doctrine of collateral estoppel in the instant matter is not appropriate because it should not satisfy the trial court's "sense of justice and equity." (Aventis Cropscience N.V.'s Combined Opp. to Dow Agroscience, LLC's Mot. for Summ. J. of Collateral Estoppel and Pioneer Hi–Bred International, Inc.'s Mot. for Summ. J. of Unenforceability, Invalidity, and Non–Infringement of the Patents–In–Suit Based Upon Collateral Estoppel at 9 (quoting *Blonder–Tongue,* 402 U.S. at 332–33, 91 S.Ct. at 1445).)

### A. Full and Fair Opportunity to Litigate in the Prior Action

Because the Missouri Action was disposed of based upon the *Monsanto* court granting summary judgment in favor of Monsanto on the issue of inequitable conduct. Aventis does not challenge whether it had a full and fair opportunity to litigate the *Monsanto* court's granting Monsanto's Motions for Partial Summary Judgment based upon invalidity and non-infringement. Accordingly, the Court will focus its present discussion solely on the *Monsanto* court's consideration of the issue of inequitable conduct. Nevertheless, on the basis of collateral estoppel, the Court will adopt the findings of the *Monsanto* court with respect to its Memoranda and Orders which found that: (1) the asserted claims of the '546 patent and claims 13 and 18 of the '372 patent are invalid for lack of enablement under 35 U.S.C. § 112; (2) the asserted claims of the '799 patent are not infringed by any insect resistant corn hybrid; and, (3) the asserted claims of the '565 patent and claim 4 of the '372 patent are not infringed by Monsanto's, and its licensees', Yieldgard ® (MON810) insect resistant corn hybrids.

**12.** Aventis does note that the Cry1F insect-resistant corn products were derived from a different corn line and were never at issue in the Missouri Action. Nevertheless, Aventis does not contend that the Cry1F products present a different issue to the Court in this action. Because the issue before this Court is whether to give preclusive effect to the Missouri Action, a determination to give preclusive effect to that action would result in the invalidation of all of the patents-in-suit because they are all linked together as descendants from the '799 patent. Accordingly, regardless of what product Aventis alleges violated the patents-in-suit, Aventis still must demonstrate that the *Monsanto* court's invalidation of its patents-in-suit does not have a preclusive effect in the instant action.

**13.** Aventis only raises the argument that it did not have a full and fair opportunity to litigate issues material to Monsanto's Motion for Summary Judgment based upon inequitable

duct, which resulted in the unenforceability of all the patents-in-suit, Aventis contends that it did not have a full and fair opportunity, substantively and evidentially, to litigate the issues material to that action. However, as previously noted, the only issue upon which Aventis focuses is the *Monsanto* court's finding of inequitable conduct with regard to the '799 patent. In support of its position, Aventis argues that a jury did not have the opportunity to view Aventis' witnesses to determine whether they intended to deceive the PTO when they submitted their declarations in support of the '799 patent application. (Aventis Cropscience N.V.'s Combined Opp. to Dow Agroscience, LLC's Mot. for Summ. J. of Collateral Estoppel and Pioneer Hi–Bred International, Inc.'s Mot. for Summ. J. of Unenforceability, Invalidity, and Non–Infringement of the Patents–In–Suit Based Upon Collateral Estoppel at 4, 9.) As a result, Aventis contends that the *Monsanto* court committed reversible error when it drew all reasonable inferences in favor of Monsanto instead of Bayer in deciding the issue of inequitable conduct.

In the proceeding before this Court, Aventis bears the burden of demonstrating that it was deprived of a fair opportunity procedurally, substantively, and evidentially to litigate the issue of inequitable conduct in the prior action. *Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1376 (Fed.Cir.1983). To substantiate Aventis' claim that it was deprived of a full and fair opportunity to litigate the issue of inequitable conduct, Aventis must rely on factors enunciated by the Supreme Court in *Blonder–Tongue*. The non-exhaustive list of factors that a court may consider when it makes a determination as to whether a patentee has had a full and fair opportunity to litigate the relevant issues in a prior case include:

> [W]hether the opinions filed by the District Court and the reviewing court, if any, indicate that the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in the suit; and whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation.

*Id.* at 333, 91 S.Ct. at 1445 (italics and footnote omitted). However, the district court's inquiry into whether a plaintiff was afforded a full and fair opportunity to litigate is quite narrow and does not involve a judgment on the merits:

> [I]t is clear from the case law that has developed since *Blonder–Tongue* that an inappropriate inquiry is whether the prior finding of invalidity was correct; instead, the court is only to decide whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit.

*Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed.Cir.1983) (citations omitted). Moreover, even though *Blonder–Tongue* only examined whether a patentee had a full and fair opportunity to litigate in an action where the patent was ultimately determined to be invalid, because unenforceability is simply permanent invalidity, the Federal Circuit Court of Appeals enunciated that the *Blonder–Tongue* reasoning is applicable to patents held unenforceable in a prior action.[14] *Gen. Electro Music*, 19 F.3d at 1413.

---

**14.** Notably, the reasons that Aventis cites to support its argument that it did not have a full and fair opportunity to litigate the issue of inequitable conduct in the Missouri Action are similar to the reasons Aventis relies upon in the appeal brief that it submitted to the Federal Circuit Court of Appeals alleging that the *Monsanto* court committed reversible error. As noted, "[t]he only inquiry open to [this Court] is whether the patentee had a full and fair opportunity to litigate the validity of the patent in the prior case." *Miss. Chem.*

Aventis' argument in support of its contention that it was not afforded a full and fair opportunity to litigate the issue of inequitable conduct is based solely on the fact that it did not receive a jury trial in the Missouri Action. As already discussed, Monsanto sought a declaratory judgment that its MON810 Yieldgard® corn products did not infringe upon the same patents-in-suit at issue in this case, which belonged to Aventis. In response, Aventis counterclaimed that Monsanto's product did infringe upon the '372, '565,- '546, and '799 patents. While Aventis' claim that Monsanto infringed upon its patents was ultimately denied when the court granted summary judgment in favor of *Monsanto,* Aventis contends that it did not have an opportunity to be heard because a jury did not have the opportunity to assess the credibility of its witnesses. However, Aventis presents no case law in support of its position. In contrast, case law does indicate that an adverse summary judgment ruling does not deny a litigant a full and fair opportunity to litigate simply because he does not get a "full-fledged" trial. *Stevenson,* 713 F.2d at 711–12 (Fed. Cir.1983) ("[Plaintiff] argues that he did not have a full and fair opportunity to litigate the validity of his patent in Suit I because the court's decision was ... based on a motion for summary judgment rather then a trial .... [However, we] believe the rationale of *Blonder–Tongue* extends to all prior determinations of invalidity; its application is not dependant on how the judgment of invalidity was reached.").

After examining the evidence submitted, this Court finds that Aventis' contention that it did not receive a full and fair opportunity to litigate the issue of inequitable conduct is unfounded because Aventis plainly had an opportunity to present its arguments and any supporting evidence in its attempt to defeat Monsanto's motions for summary judgment. Indeed, Aventis engaged in extensive factual and expert discovery and presented its findings and legal theories to the *Monsanto* court. *Monsanto v. Bayer Bioscience, N.V.,* 264 F.Supp.2d 852, 859–61 (E.D.Mo. Dec. 27, 2002) (demonstrating that the *Monsanto* court examined the Jansens declaration, Monsanto's proffered evidence of negative test results, discovery related to the issuance of the patents-in-suit, and the parties' legal arguments in order to determine whether Aventis engaged in inequitable conduct). Moreover, Aventis had the opportunity to obtain whatever testimony it desired from its own witnesses during their depositions. Notably, Aventis does not challenge either in its submissions to this Court or in its appeal of the Missouri Action before the Federal Circuit Court of Appeals that its discovery was in any way incomplete or that Monsanto did not comply with Aventis' discovery requests. Finally, inequitable conduct is equitable in nature and the trial court has the obligation to resolve the underlying facts of materiality and intent as part of the three-step inquiry which comprises a court's determination of inequitable conduct. *Baxter Healthcare Corp. v. Spectramed, Inc.,* 49 F.3d 1575, 1584 (Fed.Cir.1995). Consequently, the trial court judge, and not a jury, is ultimately responsible for making a determination regarding the issue of inequitable conduct.[15] Therefore, Aventis' con-

---

*Corp. v. Swift Agric. Chems. Corp.,* 717 F.2d 1374, 1376 (Fed.Cir.1983). The case law that has developed since *Blonder–Tongue* counsels that an inappropriate inquiry for the court examining collateral estoppel is whether the prior finding of invalidity or unenforceability was correct. *Stevenson,* 713 F.2d at 709; *Gen. Electro Music,* 19 F.3d at 1413.

**15.** The Court notes, however, that a trial court judge can permit a jury to hear evidence regarding inequitable conduct in order to permit the jury to make factual findings. *Duro–Last, Inc. v. Custom Seal, Inc.,* 321 F.3d 1098, 1110 (Fed.Cir.2003). However, such findings by the jury can only be treated as

tention that it was not afforded a full and fair opportunity to litigate the issue of inequitable conduct because it did not present its evidence to a jury is unfounded.

Aventis also argues that because it was the defendant in the Missouri Action, it did not choose the forum or the time of litigation. Regarding Aventis' contention, the Supreme Court recognizes that collateral estoppel may be used offensively against the defendant in the prior suit so long as the defendant had every incentive to fully litigate in the first lawsuit and where the identity of the issues between the actions may result in inconsistent rulings. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 332, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979). Aventis does not contend that it did not have sufficient incentive to litigate either the validity or the enforceability of the patents-in-suit in the Missouri Action. Indeed, because it filed counterclaims against Monsanto, Aventis had every incentive to fully litigate all of the issues involved in the Missouri Action. Accordingly, the Court finds that Aventis fully and fairly litigated all of its claims in the Missouri Action even though the matter was ultimately disposed of by the *Monsanto* court's summary judgment ruling in Monsanto's favor as set out in its various Orders on December 13, December 17, and December 27, 2002.

### B. Finality of the Judgment in the Missouri Action

■ While Aventis does not directly contest whether the Missouri Action is a final judgment for collateral estoppel purposes, it suggests that the application of the doctrine of collateral estoppel is inappropriate until after the Federal Circuit Court of Appeals addresses Aventis' pending appeal of the Missouri Action. Although the Fourth Circuit has not directly spoken on the issue of whether a district

court decision in a case that is currently pending appeal can be a final judgment, the Fourth Circuit, without issuing an opinion, did affirm a district court's opinion to suggest that it followed "[t]he established rule in the federal courts ... that a final judgment retains all of its res judicata consequences pending decision of the appeal ... [.]" *Warwick Corp. v. Maryland Dep't of Transp.*, 573 F.Supp. 1011, 1014 (D.Md.1983) (quoting 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4433, at 308 (1981)), *aff'd without opinion*, 735 F.2d 1359 (4th Cir.1984) (cited by *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir.1999)). Even more relevant to the instant matter, however, is the Federal Circuit's treatment of this issue. In *SSIH Equipment S.A. v. United States International Trade Commission*, the Federal Circuit noted that:

> [T]he law is well settled that the pendency of an appeal has no affect on the finality or binding effect of a trial court's holding. *Deposit Bank of Frankfort v. Board of Councilmen of City of Frankfort*, 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276 (1903). *See also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433 (1981). That rule is applicable to holdings of patent invalidity as well. *Alamance Industries, Inc. v. Gold Medal Hosiery Co.*, 194 F.Supp. 538, 540, 129 USPQ 219, 220 (S.D.N.Y. 1961).

718 F.2d 365, 370 (Fed.Cir.1983) (additional citations omitted). The Supreme Court as well as other circuit courts have expressed a similar view. *See* Wright et al., § 4433, at 308 (1981 & Supp.1998) (citing case law from the Supreme Court and from the Second, Fifth, Sixth, Seventh, Ninth, Eleventh, District of Columbia, and Federal circuits for the proposition that a

advisory in nature, and the trial court judge

must make the final findings of fact. *Id.*

final judgment retains its preclusive effect despite the pendency of an appeal). Thus, even though Aventis has appealed the Missouri Action to the Federal Circuit, for purposes of collateral estoppel, the Court finds that the Missouri Action is comprised of three final judgments entered into on December 13, December 17, and December 27, 2002. *Pharmacia,* 170 F.3d at 1381 (quoting *Williams v. C.I.R.,* 1 F.3d 502, 504 (7th Cir.1993) ("[A] judgment final in the trial court may have collateral estoppel effect even though the loser has not exhausted his appellate remedies.")). This element of collateral estoppel has therefore been satisfied in accordance with the law of the Federal Circuit, and supported by the law of many other Circuits, on the finality of a judgment entered in district court pending appeal of the same.

### C. Equitable Application of Collateral Estoppel

Additionally, Aventis argues that this Court should not adopt the findings of the *Monsanto* court under the doctrine of collateral estoppel because the *Monsanto* court committed reversible error when it gave collateral estoppel effect to the Connecticut Action. Aventis contends that it was not given a full and fair opportunity in the Missouri Action to litigate some of the issues that originated in the Connecticut Action. However, this Court is not concerned with whether the *Monsanto* court gave Aventis an opportunity to fully and fairly litigate issues it initially raised in the Connecticut Action, but instead whether the *Monsanto* court gave Aventis a full and fair opportunity to litigate the issue of the application of the doctrine of collateral estoppel to the findings in the Connecticut Action. Specifically, the standard applied by the *Monsanto* court with regard to whether Aventis had an opportunity to fully and fairly litigate the application of collateral estoppel in the Missouri Action is the same as the standard this Court has

applied regarding the issue of inequitable conduct in the Missouri Action, that is, not whether the findings of the court were correct but rather whether Aventis had an opportunity to fully and fairly litigate the application of collateral estoppel in the Missouri Action that gave preclusive effect to the Connecticut Action.

The *Monsanto* court, in its December 13, 2002 Memorandum and Order details its application of collateral estoppel with regard to the findings of the court in the Connecticut Action that precluded relitigation of infringement of the '799 patent and the validity of the '546 patent and claims 13 and 18 of the '372 patent. Specifically, with regard to the findings of the court in the Connecticut Action that precluded relitigation of infringement of the '799 patent, the *Monsanto* court noted that Aventis only challenged whether it had an opportunity to fully and fairly litigate whether Monsanto's products infringe on claims 1–5 of the '799 patent and whether the Connecticut and Missouri Actions were identical. First, the *Monsanto* court clearly stated that "Aventis, through its predecessor PGS, had ample opportunity to litigate the question of whether corn was susceptible to transformation by Agrobacterium, and took full advantage throughout the 13 days of trial by presenting numerous documents and witnesses on that question." *Monsanto v. Bayer Bioscience, N.V.,* No. 4:00CV01915 ERW, slip op. at 8 (E.D.Mo. Dec. 13, 2002). Moreover, after extensive analysis, the *Monsanto* court concluded that even though the court in the Connecticut Action treated the issue of whether monocots were susceptible to transformation by Agrobacterium as a matter of claim construction and it treated it as a matter of infringement, the issues in the two proceedings were "completely identical." *Id.* at 12. With regard to the *Monsanto* court's findings that the '546 patent and claims 13 and 18 of

the '372 patent are invalid, Aventis only challenged whether the issues in the Connecticut Action and the Missouri Action were identical. *Id.* at 17. Again, the *Monsanto* court concluded that even though the cases involved different patents, the issue of whether a person of ordinary skill in the art would have been able to insert a Bt gene into a monocot without undue experimentation was identical. *Id.* at 18. Because the *Monsanto* court plainly examined the proper application of collateral estoppel in the Missouri Action, which gave preclusive effect to the Connecticut Action, this Court finds that Aventis had an opportunity to fully and fairly litigate the application of collateral estoppel in the Missouri Action. As noted, the Court declines to examine whether the *Monsanto* court properly relied upon the Connecticut Action because it is not within this Court's jurisdiction, but rather within the jurisdiction of the Federal Circuit Court of Appeals.

Finally, Aventis appeals to the Court's sense of justice and equity to argue that collateral estoppel on the basis of inequitable conduct should not apply to the instant matter. However, the Federal Circuit Court of Appeals has clearly stated that:

> Unless the district judge finds that the patentee did not have [a full and fair opportunity to litigate], the judge must treat the prior determination of invalidity as estopping the patentee from relitigating that question. The judge cannot permit relitigation because of equitable considerations .... [T]he only discretion left to the district court's "sense of equity and justice" by *Blonder–Tongue* is in the determination of whether the plaintiff had a full and fair opportunity to litigate the prior suit finding invalidity.

*Miss. Chem. Corp.*, 717 F.2d at 1379 (citations omitted). Because the Court finds that Aventis had a full and fair opportunity to litigate the issue of inequitable conduct

in the Missouri Action and that the *Monsanto* court's grant of summary judgment on all claims is a final judgment, the Court finds that the application of the doctrine of collateral estoppel is appropriate with respect to all of the findings of the *Monsanto* court in the instant matter, particularly with regard to the issue of inequitable conduct.

In the instant matter, Aventis did not challenge whether the issues raised here were identical to those previously litigated in the Missouri Action, whether the issues raised here were actually decided in the prior proceeding, or whether the determination of the issues raised here was a critical and necessary part of the decision in the Missouri Action. As previously noted, this Court finds that Aventis did have a full and fair opportunity to litigate the application of collateral estoppel and findings of inequitable conduct, and that the grant of summary judgment in the Missouri Action is a final judgment. Accordingly, the Court finds that the *Monsanto* court's determinations that Monsanto did not infringe upon the '799 patent, the '565 patent, and claim 4 of the '372 patent, that the '546 patent and claims 13 and 18 of the '372 were precluded by the Connecticut Action based upon the doctrine of collateral estoppel, and that the remaining claims, claims 1–3 and 5 of the '372 were unenforceable because of Bayer's inequitable conduct preclude Aventis from re-litigating the identical issues in the instant action. This Court therefore adopts all findings of the *Monsanto* court established in its Memoranda and Orders related to the patents-in-suit. Accordingly, collateral estoppel is appropriately applied in the instant action, and therefore, Defendants' Motions for Summary Judgment are GRANTED on the basis of the preclusive effect of the Missouri Action.

C. Defendants' Joint Motion for a Moratorium on Discovery Related to Aventis' Infringement Claims

Defendants Pioneer and Dow also filed a Joint Motion for a Moratorium on Discovery Related to Aventis' Infringement Claims in which they requested that the Court halt discovery related to the claims of infringement brought by Aventis until the Court has the opportunity to rule on Defendants' motions for summary judgment. Because the Court finds that Aventis' claims are precluded based upon collateral estoppel and Defendants are entitled to summary judgment, Defendants' Joint Motion for a Moratorium on Discovery Related to Aventis' Infringement Claims is moot and is hereby DISMISSED.

At the April 11, 2003 hearing, the Court noted that it would give the parties direction on how to proceed with any remaining discovery that was pending after the Court's ruling on the of the summary judgment motions that were before the Court. Having made a ruling on the summary judgment motions, the Court now lifts the stay regarding compliance with United States Magistrate Judge Russell A. Eliason's Orders that may be relevant to the one issue of attorneys' fees that remains. At this point in time, the Court instructs the parties to resubmit outstanding discovery-related matters to United States Magistrate Judge Russell A. Eliason for his determination of the scope of any discovery or issues that remain and the appropriate scheduling thereof on the issues that remain in this case.[16]

## V. CONCLUSION

For the reasons stated above, the Court finds that there are no genuine issues of material fact with respect to any of Plaintiff's claims because Aventis is precluded by the doctrine of collateral estoppel from re-litigating issues that were resolved in the Missouri Action. Therefore, Pioneer Hi–Bred International, Inc.'s Motion for Summary Judgment of Unenforceability, Invalidity and Non–Infringement of the Patents–In–Suit Based Upon Collateral Estoppel, and Defendant Dow Agrosciences LLC's Motion for Summary Judgment of Collateral Estoppel are GRANTED and all claims asserted by Plaintiff against Defendants are hereby DISMISSED. Additionally, Defendants' Joint Motion for a Moratorium on Discovery Related to Aventis' Infringement Claims is moot and is hereby DISMISSED.

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

### ORDER AND JUDGMENT

For the reasons stated in the Court's Memorandum Opinion, filed contemporaneously herewith, it is hereby ORDERED, ADJUDGED AND DECREED that Pioneer Hi–Bred International, Inc.'s Motion for Summary Judgment of Unenforceability, Invalidity and Non–Infringement of the

---

**16.** Specifically, Defendants seek to continue discovery as it relates to the award of attorneys' fees pursuant to 35 U.S.C. § 285, which permits an award in an "exceptional case." While this identical issue has been briefed and heard by the *Monsanto* court, no ruling has been issued to date. Accordingly, Defendants wish to proceed with discovery on the issue of inequitable conduct to establish that the instant matter is an exceptional case. Aventis, on the other hand, asserts that be- cause Defendants rely upon the findings of the *Monsanto* court with regard to summary judgment, then Defendants should similarly be limited to the *Monsanto* court's findings when determining whether this case is exceptional under 35 U.S.C. § 285. (Joint Proposal for Amended Scheduling Order ¶ 10.) That is an issue, however, that is not before the Court because there has been no ruling by the *Monsanto* court with respect to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

Patents–In–Suit Based Upon Collateral Estoppel [Document # 254], and Defendant Dow Agrosciences LLC's Motion for Summary Judgment of Collateral Estoppel [Document # 257] are GRANTED. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all of Plaintiff's claims against Defendants are hereby DISMISSED.

It is hereby ORDERED, ADJUDGED AND DECREED that Defendants' Joint Motion for a Moratorium on Discovery Related to Aventis' Infringement Claims [Document # 251] is hereby DISMISSED as being moot.

It is hereby further ORDERED that the Court's stay regarding compliance with Orders relating to discovery is lifted with respect to the only issue remaining in the case, that is attorneys' fees pursuant to 35 U.S.C. § 285. This matter is therefore ordered to be returned to United States Magistrate Judge Russell A. Eliason for determination of the scope of discovery and scheduling thereof with respect to the remaining issue relating to attorneys' fees.